IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RODNEY ALVERSON,<br>AIS #132431, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09cv780-TFM |
| | ) | (WO) |
| | ) | |
| RICHARD ALLEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Rodney Alverson ("Alverson"), a state prisoner, challenges the constitutionality of actions taken against him at the Easterling Correctional Facility ("Easterling").   Alverson names Richard Allen, former Commissioner of the Alabama Department of Corrections ("ADOC");   Louis Boyd, Warden III;   Carter Davenport, Warden II;  Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, and Marvin Scaife, correctional officers; Kathy Holt, Director of ADOC Central Records; Sherry Seals, Classification Specialist Supervisor; and Tyrone Barrow, Classification Specialist as defendants in this cause of action.  Specifically, Alverson asserts the following claims:

(1)    The defendants denied him access to the courts by failing to provide adequate
legal supplies, confiscating evidentiary materials, and placing him in the hot
dorm.

(2)    The defendants violated his right to Equal Protection in violation of the Fourteenth Amendment.

(3)    The defendants retaliated against him for filing a federal lawsuit by conducting a shakedown of his cell and refusing to transfer him to another correctional facility.

(4)    Officer Knox subjected him to the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

(5)    The defendants violated his First Amendment right to exercise his religion by placing him in the hot dorm.

(6)    The defendants acted with deliberate indifference to his health by delaying his treatment in the health care unit.

Alverson seeks a declaratory judgment, injunctive relief and monetary damages.

The defendants filed a Special Report and relevant supporting evidentiary materials addressing Alverson's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe these reports as a motion for summary judgment.  *Order of September 30, 2009 - Doc. No. 13*.  Thus, this case is now pending on the Motion for Summary Judgment filed by the defendants.  Upon consideration of this motion, the evidentiary materials filed in support thereof, and Alverson's Response to the Motion, the court concludes that the Motion for Summary Judgment is due to be denied with respect to the excessive force claim against Officer Knox and granted with respect to the remaining

2

claims.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." FED.R.CIV.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

322-324.

When the moving parties meet their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Alverson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); FED.R.CIV.P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely

colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*,

814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is

proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Alverson has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claim. The defendants, however, are entitled to summary judgment on Alverson's remaining claims.

## III. DISCUSSION

### A. Absolute Immunity to Constitutional Claims

With respect to the alleged constitutional violations Alverson lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit

7

against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities for asserted violations of Alverson's constitutional rights. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.  Access to Courts

Alverson complains that defendants denied him access to the courts by failing to provide him extra legal kits from the library, refusing to provide him at least eighty (80) sheets of paper and additional envelopes, supplying him no more than two stamps were week, not allowing him to charge paper and other office supplies to his prisoner "P.O.M.D."

account after his funds were depleted, and temporarily placing him in the hot dorm without access to the law library.

The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect,

9

without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement....  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357.  "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.   A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison

administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion

within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct.

at 1500." *Id*. at 363.

The record in this case establishes corrections personnel gave Alverson access to legal

materials during his confinement at Easterling and in no way inhibited his preparation, filing

or processing of any legal causes of action. Nothing in the record demonstrates the actions

about which Alverson complains improperly impede or adversely affect his efforts to pursue

non-frivolous legal claims.  Alverson utterly and completely fails to come forward with any

evidence that the actions about which he complains deprived him of the ***capability*** of pursing

claims in this or any other court.  Consequently, Alverson does not establish he suffered the

requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary

judgment on his access to courts claim.  *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir.

2006) (access to courts claim fails because plaintiff did not show any actual injury);

*Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to

courts claim in "the absence of any indications of ultimate prejudice or disadvantage. . . .").

### C.  Equal Protection

Alverson alleges the actions of the defendants violate his right to equal protection.

This claim entitles Alverson to no relief.

"Despite the tendency of all rights 'to declare themselves absolute to their logical

extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001);  *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and

citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292 (1987).

The court has a properly supported motion for summary judgment from the defendants; hence, Alverson bears the burden to produce evidence which would be admissible at trial sufficient to show the defendants provided more favorable treatment to other similarly situated individuals and acted in this manner due to intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.

Alverson fails to identify any similarly situated inmate who received more favorable

treatment from the defendants.  Thus, Alverson's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319. This assertion likewise provides no basis for relief

> because [Alverson] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin. . . .  *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."  (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  Thus, summary judgment is due be granted in favor of the defendants on Alverson's claim alleging a violation of his equal protection rights.

### D.  Retaliation

Alverson claims that the defendants retaliated against him for filing a federal lawsuit

by conducting a shakedown of his cell.[2]   The defendants, however, contend that the shakedown was conducted to determine whether Alverson was wrongfully accumulating legal supplies for improper bartering or for the purpose of engaging in the unlawful practice of law on behalf of other inmates.   Alverson also claims that defendants Holt, Seals, and Barrow retaliated against him for filing a lawsuit against them by refusing to transfer him to another correctional facility.

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.

---

[2] In his Response, Alverson also argues that the defendants retaliated against him for filing a lawsuit by refusing to provide him additional paper.  As previously discussed, nothing in the record demonstrates that the lack of additional paper and legal supplies improperly impeded or adversely affected his efforts to pursue non-frivolous legal claims.   In addition, the defendants assert that they did not provide additional paper because inmates are not allowed to purchase paper from the prison store on credit, he had used his allotted number of legal kits for the month, and he had recently received a six-week advancement of paper.  This court therefore finds that the defendants have asserted a legitimate, non-retaliatory reason for refusing to provide additional legal supplies to Alverson.

*Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Alverson's claim that the defendants retaliated against him for filing a lawsuit against ADOC officials establishes that he was engaged in a protected activity. *See O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011) (citing *Smith v. Mosley*, 532 F.3d 1270 (11th Cir. 2008); *Al-Amin*, *supra*. The defendants respond that the shakedown was conducted to investigate whether Alverson was bartering with other inmates. Bartering and trading is against ADOC Rules. (Doc. No. 12, Def's Ex. A.) The undisputed facts demonstrate that the defendants shook down Alverson's cell only after Alverson requested 80 sheets of paper and additional legal kits from the law library.[3] Under the circumstances, the court finds that the defendants articulate a legitimate, non-retaliatory reason to justify the shakedown of Alverson's cell.

Alverson's claim that the classification specialists retaliated against him for filing a lawsuit by refusing to transfer him to Staton Correctional Facility likewise must fail. Alverson argues that defendants Holt, Seals, and Barrow denied his transfer to Staton Correctional Facility and subsequently transferred him to Draper Correctional Facility because he filed a federal lawsuit against them. (Doc. No. 36, p. 16.) It is undisputed that ADOC classification specialists do not have the authority to approve or deny transfers to

---

[3] Alverson admits that between June and August of 2009 he purchased food from the prison canteen which he used to "buy paper, pens, stamps and envelopes from other inmates, plus [he] had to use the food items to pay back inmates for stamps, paper, and envelopes he borrowed from them...." (Doc. No. 36, pp. 3-4.)

other institutions.  The Central Classification Review Board decides where to transfer an inmate.  (Attach. to Doc. No. 12, *Affids. of Tyrone Barrow & Carter F. Davenport*.) Alverson presents a mere conclusory allegation that the defendants' actions were retaliatory. Consequently, Alverson fails to establish that the defendants retaliated against him and, therefore, summary judgment should be granted on this claim.

 To the extent Alverson argues that the defendants should have transferred him to a different correctional facility, he is entitled to no relief.  A convicted prisoner has no constitutionally protected right to confinement in a particular penal facility.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Thus, an inmate may be confined in any correctional facility without implicating the prisoner's constitutional rights.  *Id.*; *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Although the plaintiff's confinement at Easterling or Staton may have entailed "more burdensome conditions" than that of another facility such confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.' [*Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)."  *Sandin v. Conner*, 515 U.S. 472, 478 (1995).  Consequently, the failure to transfer Alverson to a more favorable correctional facility does not rise to the level of a constitutional violation and such claim therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

**E.  Excessive Force**

At this stage of the proceedings, the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to [Alverson]. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)." *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). In this light, the facts are that on August 13, 2009, while walking to the D-Dorm to retrieve an inmate pass to the administration building, Alverson was stopped by Officer Knox. (Doc. No. 1, p. 10.) Alverson asked Officer Knox to call Lieutenant Woods in the administration building and ask whether he would approve a store credit for the purchase of writing supplies from the prison store. (*Id.*, at 11.) Officer Knox responded that Alverson should obtain his legal supplies from the law library. (*Id.*) When Alverson explained that he had already received his allotted number of legal kits from the library, Officer Knox told Alverson that he was tired and frustrated and ordered him to return to D-Dorm. (*Id.*) Alverson began walking toward the dormitory and said, "I'll handle it myself." (*Id.*) Officer Knox ordered Alverson to stop. (*Id.*) When Alverson stopped and turned around, Officer Knox began choking Alverson. (*Id.*) While shaking Alverson back and forth, Officer Knox said, "Inmate I told you to go back to your g-dd-m dorm, I didn't tell you to say anything els[e]." (*Id.*) Alverson kept his hands behind his back and did not resist. (*Id*, p. 12.) Immediately after the incident, Alverson demanded that Officer Knox take him to the health care unit. (*Id.*) Officer Knox, however, refused to do so and ordered him to return to his dorm. (*Id.*)

Alverson went to the shift office and asked Officers Wright and Lawson to take him

to the health care unit.  (*Id.*)  The officers advised Alverson that they would arrange for him to go to the health care unit after the afternoon prisoner count was taken.  (*Id.*)  Fifty-five minutes after the alleged assault, an officer escorted Alverson to the health care unit.  (*Id.*)  Upon leaving the health care unit, Officer Wright told Alverson that he was under disciplinary investigation and ordered him to go to the hot dorm. (*Id.*)

Officer Knox argues that he is entitled to qualified immunity with respect to Alverson's excessive force claim.  However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). Thus, a qualified immunity defense is not available when a plaintiff alleges the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  *Skrtich*, 280 F.3d  at 1302;  *see also Hudson*, 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether the Alverson's allegation that Officer Knox maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting
> as long as it is applied "in a good faith effort to maintain or restore discipline

[and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

Alverson alleges that Officer Knox choked him while repeatedly shaking him back and forth for no reason and while he posed no threat to the officer. The body chart submitted by the defendants indicates Alverson reported to the healthcare unit on the afternoon of the incident complaining that Officer Knox choked him and that his neck was "a little sore." (Doc. No. 12-6, *ADOC Body Chart dated August 13, 2009*.) A nurse noted "a little redness below [Alverson's] ear [and] down [his] neck." (*Id.*)

Officer Knox admits that he used some force against Alverson; however, he denies that the use of force was excessive. Specifically, Officer Knox alleges that he grasped the collar of Alverson's shirt after Alverson refused to obey a direct order to stop walking. (Doc. No. 12-6, *Officer Knox's Affid.*, p. 1.) Viewing the facts in the light most favorable to Alverson, as is required at this stage of the proceedings, the court concludes Officer Knox

is not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Skrtich*, 280 F.3d at 1301. Consequently, the Motion for Summary Judgment with respect to the excessive force claim lodged against Officer Knox in his individual capacity is due to be denied.

## F.  Deliberate Indifference to Health

Alverson complains the defendants acted with deliberate indifference to a serious medical need by delaying treatment for his injuries after the incident with Officer Knox occurred. The defendants deny they acted with deliberate indifference to Alverson's medical condition.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts

signaling the need and an actual inference of required action from those facts." *Taylor*, 221

F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of

and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs

only when a defendant "knows of and disregards an excessive risk to inmate health or safety;

the [defendant] must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511

U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have

actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known

risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not, while

no cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court has ... emphasized that not 'every claim by
> a prisoner that he has not received adequate medical treatment states a
> violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291;
> *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment
> only when it is 'so grossly incompetent, inadequate, or excessive as to shock
> the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d
> at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not
> rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97
> S.Ct. at 292 ('Medical malpractice does not become a constitutional violation
> merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere
> negligence or medical malpractice 'not sufficient' to constitute deliberate
> indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not
> constitute deliberate indifference).  Nor does a simple difference in medical
> opinion between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual

punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551
F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor v. Adams*, 221 F.3d 1254,

1258 (11th Cir. 2000) (citation and internal quotations omitted) (To show deliberate

indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants'

response to the need was more than "merely accidental inadequacy, negligence in diagnosis

or treatment, or even medical malpractice actionable under state law.").  Moreover, "whether

government actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an

appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537,

1545 (11th Cir. 1995); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference

of opinion as to how a condition should be treated does not give rise to a constitutional

violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact

inmate desires a different mode of medical treatment does not amount to deliberate

indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.

1981) (prison medical personnel do not violate the Eighth Amendment simply because their

opinions concerning medical treatment conflict with that of the inmate-patient).  Self-serving

statements by a plaintiff do not create a question of fact in the face of contradictory,

contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir.

1990).

    In addition to the above described requisite elements, when an inmate's deliberate

indifference claim relates to a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002).

Alverson presents no evidence indicating that his condition materially worsened during the fifty-five (55) minutes between the alleged altercation with Officer Knox and his treatment in the health care unit. The health care records indicate that, other than Alverson "[having] a little redness below ear down neck," there were no hand prints, fingerprints, bruising, marks or swelling on his body. (Doc. No, 12-6.) In addition, the nurse noted that Alverson stated, "My neck is a little sore but I am fine." (*Id.*)

Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants did not violate Alverson's constitutional rights. The medical care Alverson received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Although Alverson alleges he should have been escorted to the health care unit immediately after the incident occurred, this assertion, without more, fails to establish

deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Alverson fails to present any evidence which indicates the defendants knew that a delay in treating his conditions created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Alverson's medical condition.  Consequently, summary judgment is due to be granted in favor of the defendants.  *Carter*, 352 F.3d at 1350.

### G. The Exercise of Religion in the Hot Dorm

Alverson contends that he was not allowed to attend church while housed in the hot dorm. (Doc. No. 1, p. 16.)  "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell v.*

*Procunier*, 417 U.S. 817, 823 (1974).  However, this concern must be balanced against the constitutional rights of inmates which are not stripped away at the prison gate one of  which includes the right to free exercise of religion.  *See  Johnson v.  Avery*, 393 U.S. 483, 486 (1969).  In determining whether prison rules and regulations pass constitutional muster, courts apply a lesser standard of scrutiny when reviewing alleged violations of protected rights out of deference to the complexities of prison administration with which federal courts are not adept at dealing.  *See Turner v.  Safley*, 482 U.S. 78, 81 (1987).  Under *Turner*, federal action by prison officials that infringes upon a prisoner's First Amendment rights is valid if it is reasonably related to legitimate penological interests.  *Id.* at 89.

Here, Alverson complains that he was not allowed to attend church while housed in the hot dorm.  He has failed to allege that this inadequacy, however, was not reasonably related to the prison's legitimate interests nor has he alleged that he was not permitted to actually engage in any sort of weekly religious observance within the hot dorm.  Indeed, it is undisputed that inmates housed in the restricted privileges dorm are allowed to possess religious materials and to worship within their assigned dorm.  Further, Alverson has not demonstrated that his temporary inability to go to a specific location in order to engage in the worship of his religion unduly burdened his ability to engage in the free exercise of his religion.[4]  Accordingly, the Motion for Summary Judgment with respect to Plaintiff's religion

_____

[4]*See*  42 U.S.C. § 2000cc,  *et seq.* (2000) - the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). The statute prescribes that "[n]o government shall impose a substantial burden on the religious exercise" of prisoners unless the government can demonstrate that the burden both serves a compelling government interest and is the least restrictive means of advancing that interest. 42 U.S.C. §

claim is due to be granted in favor of the defendants.

### H.  Prisoner Co-Payments

To the extent Alverson argues that his constitutional rights have been violated because a co-payment is deducted from the funds available in his prison account each time he seeks medical treatment, the court concludes he fails to allege a constitutional violation.  An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *Conlogue v. Shinbaum*, 949 F.2d 378, 380-81 & n.5 (11th Cir. 1991).  The actions about which the plaintiff complains, standing alone, do not violate the constitution.  The mere fact that the plaintiff is assessed co-payments for an examination by a doctor or a nurse does not in any way deprive the plaintiff of a protected right, privilege or immunity.  *Shapley v. Nevada Bd. of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Jones-Bey v. Cohn*, 115 F.Supp.2d 936, 940 (N.D. Ind. 2000);  *Bester v. Wilson*, 2000 WL 1367984 at *8 (S.D. Ala. August 18, 2000) ("[T]he charging of a fee to prisoners for medical treatment from their funds has been held to be constitutional when challenged

---

2000cc- 1(a) (2000).

on several due process and Eighth Amendment grounds.").  The evidence in this case does not establish that the plaintiff was denied medical treatment because he was unable to pay the fee.  Thus, the plaintiff has failed to allege a violation of his constitutional rights. Consequently, the motion for summary judgment with respect to this claim should be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it be and is hereby

ORDERED as follows:

1. The defendants' motion for summary judgment with respect to the plaintiff's constitutional claims for monetary damages lodged against them in their official capacities be GRANTED as the defendants are entitled to absolute immunity from these claims.

2.  The motion for summary judgment filed on behalf of Officer Knox as to the plaintiff's excessive force claim against this defendant in all aspects of his individual capacity be DENIED.

3.  The motion for summary judgment filed on behalf of defendants Richard Allen, Louis Boyd, Carter Davenport,  Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaife, Kathy Holt, Sherry Seals, and Tyrone Barrow, with the exception of the plaintiff's excessive force claim against Officer Knox, be GRANTED.

4. This case be set for a set for a jury trial on the plaintiff's claim of excessive force

lodged against Officer Knox.

DONE this 23rd day of August, 2012.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE